UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FRED J. THOMPSON,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-11856** |
| **HOUSING AUTHORITY OF NEW ORLEANS, ET AL.,**<br>    **Defendants** | **SECTION: "E" (2)** |

### ORDER AND REASONS

Before the Court is a Motion to Remand filed by Plaintiff Fred J. Thompson.[1] The motion is opposed.[2] Thompson filed a reply memorandum in further support of his motion to remand.[3] On September 7, 2016, the Court heard oral argument from the parties, and ordered the parties to submit supplemental briefing on the applicability of the *Pullman* abstention doctrine to this case.[4] Only the Defendants submitted a memorandum.[5] For the reasons set forth below, the Plaintiff's Motion to Remand is **GRANTED IN PART**.

### BACKGROUND

The Plaintiff, Fred J. Thompson, brings claims against Defendants Housing Authority of New Orleans ("HANO"), Robert E. Anderson, and Gregg Fortner (collectively, the "Defendants") claiming he was denied the protection of the state civil service laws under a statute that violates the Louisiana Constitution.[6] The Plaintiff also

---

[1] R. Doc. 6.
[2] R. Doc. 8.
[3] R. Doc. 16.
[4] R. Doc. 17.
[5] R. Doc. 18.
[6] R. Doc. 1-4.

1

brings federal law claims arising under 42 U.S.C. §§ 1983, 1985, and 1986.[7] Thompson was a police officer for HANO in New Orleans, Louisiana.[8] Defendant HANO is a public housing authority that assists in providing affordable housing to low and moderate-income families in New Orleans.[9] Defendant Robert E. Anderson was the Director of Public Safety for HANO, and Defendant Gregg Fortner was the Executive Director for HANO.[10] On May 9, 2016, Thompson filed suit against the Defendants in the Civil District Court for the Parish of Orleans, State of Louisiana.[11] This case was removed to this Court on the basis of federal question jurisdiction on June 27, 2016.[12]

The Plaintiff's claims stem from an incident in which Thompson, a HANO police officer, was terminated for alleged insubordination.[13] Thomson alleges, on February 20, 2016, he and his partner, Officer Anthony Lindsey, drove HANO unit 904 to General Degaulle Drive and L.B. Landry Avenue in New Orleans to assist HANO police officer Edgar Baron, who had stopped a pedestrian.[14] When Thompson and Officer Lindsey arrived, they observed a black male handcuffed in the rear of Officer Baron's HANO police unit.[15] According to Thompson, on February 22, 2016, Sergeant Harry Stanley met with him and Officer Lindsey, and informed them that one of them would have to "ride" with Officer Baron.[16] Plaintiff informed Sgt. Stanley that he did not want to ride with Officer Baron because he believed Baron had a history of violating HANO residents' civil rights.[17]

---

[7] *Id.*
[8] *Id.* at 2.
[9] *Id.* at 1.
[10] *Id.*
[11] *Id.*
[12] R. Doc. 1.
[13] *See generally* R. Doc. 1-4.
[14] *Id.* at 2.
[15] *Id.*
[16] *Id.* at 3.
[17] *Id.*

Thompson alleges Sgt. Stanley did not order Plaintiff to ride with Officer Baron, but notified Lieutenant Tyrone Martin of Plaintiff's opposition.[18] After being ordered to report to HANO's main office, Thompson alleges Lt. Martin instructed him to give a written statement about Officer Baron's February 20 stop and include a statement of why Thompson did not wish to ride with Officer Baron.[19] According to Thompson, he complied with the order and wrote a statement about the incident.[20]

On February 25, 2016, Thompson alleges, he met with Defendant Robert Anderson, Director of Public Safety/Chief for HANO, and was instructed to sign a letter reprimanding him for violations of the HANO Police Department Code of Conduct for insubordination and conduct unbecoming of a HANO officer.[21] On February 29, 2016, Thompson alleges he received a letter from Defendant Gregg Fortner, Executive Director of HANO, notifying Thompson of his intention to terminate him and informing Thompson that he could be terminated at any time because he held a probationary status.[22] According to Thompson, he was told he had the right to file a grievance in writing within five business days, and he was immediately placed on administrative leave during the grievance period.[23] Thompson alleges, on March 3, 2016, he timely filed a grievance letter, asserting that he was never given a copy of the HANO Police Department's Code of Conduct, was never officially ordered by Sgt. Stanley to ride with Officer Baron, and was already given a written reprimand on February 25, 2016 for the alleged violations for which he was being terminated.[24] According to Thompson, on March 9, 2016, Defendant

---

[18] *Id.*
[19] *Id.*
[20] *Id.* at 4.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at 5.

3

Fortner conducted a hearing during which Defendant Fortner allegedly forbade Plaintiff or Plaintiff's counsel from recording the hearing, which Thompson alleges is in violation of Louisiana Revised Statutes section 40:2531.[25] On March 14, 2016, Thompson received notice from Defendant Fortner that he was terminated.

Thompson alleges he was not afforded the opportunity to call witnesses or examine HANO's witnesses, and that he was not given protections guaranteed to civil service employees by the State Department of Civil Service and the Police Officer's Bill of Rights, as mandated by Article X, Section 2 of the Louisiana Constitution and Louisiana Revised Statutes section 40:2531.[26] Additionally, Thompson challenges the constitutionality of Louisiana Revised Statutes section 40:539(C)(8)(b), which provides HANO "shall not be considered to be an instrumentality of the state for the purposes of Article X, Section 1(A) of the Constitution of Louisiana, and employees of the authority shall not be included in the state civil service."[27] Finally, Thompson asserts equal protection and due process claims under 42 U.S.C. §§ 1983, 1985, and 1986.[28]

The Defendants removed Thompson's claims to this Court on June 27, 2016, citing the Court's jurisdiction over federal question cases pursuant to 28 U.S.C. § 1331.[29] In the Notice of Removal and Opposition to the Motion for Remand, the Defendants argue this Court has original jurisdiction over the claims arising under federal law and supplemental

---

[25] *Id.*
[26] *Id.*
[27] *Id.* at 9; La. R.S. § 40:539(C)(8)(b). After section 40:539 was amended in 2013 to exempt HANO from state civil service requirements, the legislature made three additional amendments to exempt the Cottonport Housing Authority, Denham Springs Housing Authority, and the Housing Authority of Oil City. *Id.* §§ 40:539(C)(8)(c)–(e).
[28] *Id.* at 7.
[29] R. Doc. 1.

4

jurisdiction pursuant to 28 U.S.C. § 1367 over Thompson's state-law claims and therefore, the Court should remove the entire case.[30]

On July 14, 2016, Thomson filed a motion to remand this case to state court.[31] Thompson argues that because this Court and the state court have concurrent jurisdiction over the claims arising under federal law, the entire case should be remanded.[32] Thompson also argues that the entire case should be remanded because state law predominates in the matter and the claims involve unsettled issues of state law that should be decided by a Louisiana court.[33]

On September 7, 2016, the Court heard oral argument on the motion to remand.[34] The Court ordered the parties to file memoranda regarding whether Thompson's claim that Louisiana Revised Statutes section 40:539(C)(8)(b) is unconstitutional under the Louisiana Constitution triggers the application of the *Pullman* abstention doctrine.[35] The Defendants filed a memorandum in support of their position that the *Pullman* abstention doctrine does not apply.[36]

## LAW AND ANALYSIS

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."[37] However, "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"[38] Pursuant to 28 U.S.C. § 1441, a defendant may remove an action from state court to federal court if the action is

---

[30] *Id.*; R. Doc. 8.
[31] R. Doc. 6.
[32] R. Doc. 6-1.
[33] *Id.*
[34] R. Doc. 17.
[35] *Id.*
[36] R. Doc. 18.
[37] *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (internal quotation marks and citation omitted).
[38] *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 313 (5th Cir. 1993) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)).

5

one over which the federal court possesses original jurisdiction.[39] The removing party bears the burden of proving federal subject-matter jurisdiction exists and thus removal is proper.[40] To determine whether jurisdiction exists, the federal court considers the claims in the state court pleadings as they existed at the time of removal.[41] Any doubt as to whether removal jurisdiction is proper should be resolved in favor of remand because removal jurisdiction must be strictly construed.[42]

In this case, there is no allegation of diversity jurisdiction; thus, there must be federal question jurisdiction for removal to be proper.[43] District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."[44] Cases "arise under" federal law in one of two ways. Most commonly, federal question jurisdiction is invoked when a plaintiff pleads a cause of action created by federal law.[45] "There is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction . . . ."[46] That is, federal question jurisdiction will lie if "a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[47]

---

[39] 28 U.S.C. § 1441; *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted).
[40] *Manguno*, 276 F.3d at 723 (citations omitted).
[41] *See id.*
[42] *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988).
[43] *See Willy*, 855 F.2d at 1164.
[44] 28 U.S.C. § 1331.
[45] *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).
[46] *Id.*
[47] *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (2008) (internal quotation marks and citation omitted). For removal purposes, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The well-pleaded complaint rule recognizes the principle that a plaintiff is the master of his complaint. *Carpenter v. Wichita Falls Ind. School Dist.*, 44 F.3d 363, 366 (5th Cir. 1995). There are, however, narrow exceptions to the well-pleaded complaint rule. One such exception exists when

The Plaintiff argues the allegations in his petition do not present a claim created by federal law, raise a substantial issue of federal law, or provide any other statutory, constitutional, or jurisprudential basis for the exercise of federal court jurisdiction.[48] For this reason, the Plaintiff contends this case must be remanded to state court for lack of federal subject-matter jurisdiction. The Defendants contend the petition alleges many claims that arise under and are governed by federal law, such as claims under 42 U.S.C. §§ 1983, 1985, and 1986.[49]

Federal question jurisdiction exists when a plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law.[50] A case falls under this special category of cases "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."[51] "Ultimately, whether a federal issue embedded in the matrix of a state law claim will support federal question jurisdiction entails a pragmatic assessment of the nature of the federal interest at stake . . . ."[52]

---

Congress creates an exception by expressly providing that a state court action asserting only state law claims may be removed to federal court. *See Beneficial Nat'l Bank, et al. v. Anderson*, 539 U.S. 1, 6 (2003). The other exception is where "a federal statute wholly displaces the state-law cause of action through complete preemption." *Id.* at 8. Absent these extraordinary circumstances, the well-pleaded complaint rule governs. *Carpenter*, 44 F.3d at 367; *Caterpillar*, 482 U.S. at 392.
[48] R. Doc. 6-1; R. Doc. 16.
[49] R. Doc. 8.
[50] *See Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).
[51] *Id.* (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).
[52] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917 (5th Cir. 2001).

There is no question that this Court has original jurisdiction over the Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986, which arise under federal law.[53] Federal courts, however, have the discretion to abstain from exercising jurisdiction under the *Pullman* abstention doctrine.[54] For the *Pullman* abstention doctrine to apply, two elements must be present: (1) a federal constitutional challenge to a state action, and (2) an unclear issue of state law, that, if resolved by the state court, would obviate the need for the federal court to rule on the federal constitutional issue.[55] Under the *Pullman* abstention doctrine, a federal court should abstain from adjudicating the constitutionality of a state law "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided."[56] Under *Pullman*, the federal court stays the federal claims, and defers to the state court, giving it an opportunity to clarify the state law in a way that will make the federal court's constitutional ruling unnecessary.

In their supplemental memorandum, the Defendants admit that a state-court interpretation of whether section 40:539(C)(8)(b) is constitutional would "narrow the adjudication of the federal claims."[57] The Defendants, however, argue the *Pullman* abstention doctrine does not apply in this case because there is no "close or undecided issue of law that should serve as the basis of this Court's abstention"[58] because Louisiana

---

[53] 28 U.S.C. § 1331; *see also Raines v. City of Starkville*, 986 F.2d 1418 (5th Cir. 1993).
[54] *R.R. Comm'n of Tx. v. Pullman Co.*, 312 U.S. 496 (1941).
[55] *See Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 653 (5th Cir. 2002).
[56] *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (quoting *Pullman*, 312 U.S. at 500).
[57] *Id.* at 10.
[58] R. Doc. 18 at 4.

8

Revised Statutes section 40:539(C)(8)(b) is unambiguous and is clearly constitutional under the Louisiana Constitution.[59]

In 1996, the U.S. Department of Housing and Urban Development ("HUD") determined HANO was in substantial default pursuant to 42 U.S.C. § 1437d(g), which authorized HUD to force HANO into federal receivership.[60] When under federal receivership, the Secretary of HUD exempted HANO from state civil service laws because the state civil service requirements impeded HANO's ability to correct its substantial default.[61] Federal law allows the Secretary of HUD to preempt state laws and waive state civil service requirements.[62] The Secretary was found to have properly exercised this authority in *McGowan v. U.S. Dept. of Housing & Urban Development*.[63] HANO remained under federal receivership, and therefore exempt from state civil service laws, until June 30, 2014, when it was returned to local control.[64] In anticipation of HANO exiting federal receivership, the Louisiana Legislature amended Louisiana Revised Statutes section 40:539(C)(8)(b) to provide that HANO was not to be considered an

---

[59] *Id.* at 6.
[60] *HUD Takes Over the Housing Authority of New Orleans*, Report to the Honorable Richard H. Baker, House of Representatives, U.S. GENERAL ACCOUNTING OFFICE, http://www.gao.gov/products/RCED-96-67 (May 1996); *see also HUD Returns Housing Authority of New Orleans to Local Control*, NOLA.GOV (May 28, 2014), http://www.nola.gov/mayor/press-releases/2014/20140528-hano-to-transition-to-local-control/ ("Prior to administrative receivership, HUD, the City of New Orleans, and HANO implemented several reforms and oversight strategies which failed to improve operations at HANO. HANO spent decades in serious default.  HANO struggled to obligate grants including millions of dollars in HOPE VI grants, or implement proper procurement to revitalize its aging and obsolete public housing stock. HANO was deficient in other operational areas, such excessive vacant unit turnover time (200 days), over four times the satisfactory number of days.").
[61] *See McGowan v. U.S. Dept. of Housing & Urban Dev.*, No. 08-5241, 2009 WL 10203277 (E.D. La. 12/31/09).
[62] 42 U.S.C. § 1437d(j)(3)(D)(1)(V).
[63] *Id.*
[64] *HUD Returns Housing Authority of New Orleans to Local Control*, NOLA.GOV (May 28, 2014), http://www.nola.gov/mayor/press-releases/2014/20140528-hano-to-transition-to-local-control/.

instrumentality of the state for the purposes of Article X of the Louisiana Constitution and that HANO would remain exempt from state civil service requirements.[65]

The Defendants argue that the amendment to section 40:539(C)(8)(b) is clear and unambiguous and that Louisiana courts have already held the statute is constitutional under the Louisiana Constitution.[66] In support of their position, the Defendants reference two cases. The first, *McGowan*, was decided in 2009—when HANO remained under federal receivership—and held the Secretary of HUD had express congressional authority to preempt state laws and exempt HANO from the state's civil service requirements.[67] This is not the issue now before this Court. In this case, the Plaintiff is seeking a declaration that section 40:539(C)(8)(b), enacted in 2013 in anticipation of HANO returning to local control, is unconstitutional under Article X of the Louisiana Constitution. The Defendants also rely on *Garcia v. HANO*, which was decided in 2009, and which affirmed the Civil Service Commission's dismissal of a HANO employee's appeal of termination.[68] The Louisiana First Circuit recognized that HANO's exemption from state civil service requirements while under HUD control was authorized by Congress.[69] Otherwise, the Court held that the employee's claims were dismissed because her appeal to the civil service commission based on sex and race discrimination, claims for which HANO employees still enjoyed civil service protection, were first raised on her appeal to the First Circuit, when the claims should have been raised before the Commission.[70] Again, the *Garcia* case does not reach the issue in the instant matter—

---

[65] 2013 La. Act 75.
[66] R. Doc. 18 at 7–8.
[67] *McGowan*, 2009 WL 10203277.
[68] *Garcia v. Hous. Auth. of New Orleans*, No. 09-1058, 2009 WL 4981281 (La. App. 1 Cir. 12/23/09).
[69] *Id.*
[70] *Id.*

whether the legislative amendment that allows HANO to remain exempt from state civil service requirements after the entity returned to local control is constitutional under Article X of the Louisiana Constitution.

The Defendants fail to show that the constitutionality of section 40:539(C)(8)(b) is a clear and settled issue of Louisiana law. The constitutionality of the 2013 amendment to section 40:539(C)(8)(b) has yet to be decided by a Louisiana court. As such, the constitutionality of section 40:539(C)(8)(b), which exempts HANO from state civil service requirements, is an unsettled issue of state law. This case turns on the determination of the constitutionality of a Louisiana statute under the Louisiana Constitution, and resolution of this question of state law may eliminate any need for federal constitutional adjudication. *Pullman* abstention is therefore appropriate. Where *Pullman* abstention is appropriate, the district court retains jurisdiction over the federal claims until a resolution of the state law issues in state court.[71] Accordingly, Plaintiff's Motion to Remand is granted in part. Plaintiff's state-law claims are remanded and Plaintiff's federal-law claims under 42 U.S.C. §§ 1983, 1985, and 1985 are stayed pending the resolution of the state-law claims.

## CONCLUSION

**IT IS ORDERED** that the Plaintiff's Motion to Remand is **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that the Clerk of Court mark this action closed for statistical purposes.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction over the Plaintiffs' claims arising under federal law and that the case shall be restored to the trial

---

[71] *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964).

docket upon motion of a party if circumstances change, so that it may proceed to final disposition; this order shall not prejudice the rights of the parties to this litigation.

**New Orleans, Louisiana, this 19th day of September, 2016.**

_____*Susie Morgan*_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**